*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 33**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

SHAWN MICHAEL SMITH,
*Defendant and Appellant.*

No. 20130583
Filed August 26, 2014

On Certiorari to the Utah Court of Appeals

Fifth District, Cedar City
The Honorable G. Michael Westfall
No. 101500429

Attorneys:

Sean D. Reyes, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen.,
Salt Lake City, for appellee

Herschel Bullen, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 The question presented in this case is whether a district court lacks subject matter jurisdiction to accept a defendant's guilty plea where the defendant was not bound over following either a preliminary hearing or an express waiver of the right to a

preliminary hearing.[1] The court of appeals held that "a district court cannot exercise its jurisdiction to accept a guilty plea until a defendant has been bound over following either a preliminary hearing or the defendant's waiver of a preliminary hearing."[2]

¶2 We reverse the court of appeals' decision and conclude that while it is error for a district court to accept a guilty plea without holding a preliminary hearing or obtaining an express waiver from the defendant of the right to a preliminary hearing, such an error does not deprive the court of subject matter jurisdiction. Utah's current statutory scheme grants district courts broad subject matter jurisdiction over criminal cases. And nothing in the Utah Constitution or Utah Code makes holding a preliminary hearing, obtaining an express waiver of the right to a preliminary hearing, or issuing a bindover order a prerequisite to a district court's exercise of subject matter jurisdiction.

**Background**

¶3 On July 20, 2010, Adult Probation and Parole agents found methamphetamine in Shawn Michael Smith's bedroom. Mr. Smith and his wife admitted they smoked methamphetamine earlier that same day and both tested positive for methamphetamine.

¶4 Two days later, the State filed an information charging Mr. Smith with one count of possession or use of a controlled substance. Mrs. Smith was similarly charged. In addition to facing charges, the Smiths lost custody of their two children. In an apparent attempt to regain custody of the children, the Smiths quickly reached a joint plea agreement with the State. Under that agreement, Mr. Smith agreed to plead guilty to a second-degree felony and Mrs. Smith agreed to plead guilty to a class A misdemeanor. The two hoped that this arrangement would keep Mrs. Smith out of jail so she could attempt to regain custody of the children.

¶5 The Smiths appeared in court on August 4, 2010, for their joint preliminary hearing before Judge John Walton. What occurred, however, was not a preliminary hearing. Rather, discussions between Judge Walton and counsel immediately turned to the issue of Mr. Smith's guilty plea. Judge Walton never expressly asked Mr. Smith whether he waived his right to a preliminary hearing.

---

[1] Today we have also issued an opinion in a companion case that raises this same issue. *See State v. Young*, 2014 UT 34.

[2] *State v. Smith*, 2013 UT App 52, ¶ 11, 306 P.3d 810.

Additionally, Mr. Smith's written plea statement did not refer to his right to a preliminary hearing. Eventually, he pled guilty to second-degree felony possession or use of a controlled substance in a drug-free zone.

¶6   Less than a month after entering his plea, Mr. Smith requested new counsel because he was concerned that his counsel could not adequately provide effective representation to both him and his wife. The court allowed Mr. Smith's counsel to withdraw and appointed new counsel to represent him. Mr. Smith then filed a motion seeking to withdraw his guilty plea. He alleged that his previous attorney's joint representation of him and his wife improperly influenced him to enter the plea, which resulted in his plea being unknowing and involuntary. He also alleged that at the time of the hearing he was not taking necessary medications, so he was confused and unable to remember the hearing.

¶7   On March 1, 2011, Mr. Smith appeared for a hearing on his motion to withdraw his guilty plea. The judge presiding at this hearing, Judge G. Michael Westfall, was not the same judge who had accepted Mr. Smith's guilty plea nearly seven months earlier. At the hearing, Mr. Smith changed course by withdrawing his motion to withdraw. He then asked to be immediately sentenced. Before sentencing Mr. Smith, Judge Westfall advised him of his right to a preliminary hearing in the following colloquy:

> THE COURT: All right. Now, Mr. Smith, before I announce my sentence, is there anything else you want to bring to my attention?
>
> MR. SMITH: No.
>
> THE COURT: Okay. Mr. Shawn Michael Smith, pursuant to your--okay. Well, let me just check one more thing here.
>
> Your plea, when you pled guilty, it was entered in--to Judge--before Judge Walton. I don't know if Judge Walton has the practice of making sure that in a felony case, you have waived your right to a preliminary hearing, but I want to make sure we address that at this point.
>
> There is a body of law that would suggest that if you plead guilty, you've waived any prior errors in the case but I want to make sure that you understand that you have the right to a preliminary hearing. I don't know if

you waived your right to a preliminary hearing or not before you entered your plea. But if I proceed to sentencing today, that means you will never have a preliminary hearing. Do you understand that?

MR. SMITH: I don't know what happened with my-- that's fine, I--I guess.

THE COURT: All right. You understand that and you're in agreement with that?

MR. SMITH: Yeah.

THE COURT: All right. And the defendant appears to understand the ramifications of that and so I'm going to proceed.

Judge Westfall then sentenced Mr. Smith to serve one to fifteen years in prison.

¶8    Mr. Smith appealed to the Utah Court of Appeals, where he argued "that because he was never formally bound over, the district court never obtained subject matter jurisdiction over the case."[3] The court of appeals agreed and held "that a failure to bind over a defendant following either a preliminary hearing or the waiver of the right to a preliminary hearing is a jurisdictional defect that renders his guilty plea void."[4] The State petitioned for writ of certiorari, which we granted. We have jurisdiction pursuant to Utah Code Section 78A-3-102(5).

## Standard of Review

¶9    This case is before us on writ of certiorari. "On certiorari, we review the decision of the court of appeals for correctness, without deference to its conclusions of law."[5] The question presented here is whether the district court had subject matter jurisdiction to enter the guilty pleas. "Challenges to subject matter jurisdiction present questions of law, which we . . . review for correctness."[6]

---

[3] *State v. Smith*, 2013 UT App 52, ¶ 7, 306 P.3d 810.

[4] *Id.*

[5] *Manning v. State*, 2005 UT 61, ¶ 10, 122 P.3d 628.

[6] *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 2012 UT 56, ¶ 9, 289 P.3d 420 (internal quotation marks omitted).

## Analysis

¶10 The outcome of this case turns on whether a district court's failure to bind a defendant over following a preliminary hearing, or an express waiver by the defendant of the right to a preliminary hearing, is jurisdictional.[7] If the error is not jurisdictional, Mr. Smith cannot now attack the validity of his plea or pre-plea proceedings because such a challenge would be untimely under Utah law.[8] On the other hand, if the district court's error is jurisdictional, Mr. Smith can challenge his plea as void because jurisdictional challenges may be raised at any time.[9] Mr. Smith argues that the district court's failure to hold a preliminary hearing or obtain an express waiver from him of his right to a preliminary hearing is a jurisdictional defect and renders his guilty plea void. In contrast, the State argues that the error is not jurisdictional and further contends that the error

---

[7] While throughout this opinion we refer to a criminal defendant's right to a preliminary hearing, UTAH R. CRIM. P. 7(h)(1), we recognize that a defendant may choose to waive that right. *Id.* Any reference we make in this opinion to the defendant's right to a preliminary hearing includes the defendant's ability to waive that right.

[8] UTAH CODE § 77-13-6(2)(b) ("A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion *before sentence is announced*." (emphasis added)); *State v. Ott*, 2010 UT 1, ¶ 18, 247 P.3d 344 ("We have previously held that failure to withdraw a guilty plea within the time frame dictated by section 77-13-6 deprives the trial court and appellate courts of jurisdiction to review the validity of the plea."); *State v. Rhinehart*, 2007 UT 61, ¶ 17, 167 P.3d 1046 (explaining that a defendant "cannot achieve through a challenge to the bindover what [the defendant] was foreclosed from doing by section 77-13-6–assail the lawfulness of [the defendant's] plea").

[9] *See, e.g., Brown v. Div. of Water Rights of Dep't. of Natural Res.*, 2010 UT 14, ¶ 13, 228 P.3d 747 ("Jurisdictional challenges . . . raise fundamental questions regarding a court's basic authority over the dispute. And a challenge to the subject matter jurisdiction of the court is unique among jurisdictional challenges in that it . . . can be raised at any time, including for the first time on appeal."); *Rhinehart*, 2007 UT 61, ¶ 15 ("Except in those instances in which errors affect the court's jurisdiction or where claims of error are expressly preserved for appeal, a conviction or guilty plea acts as a waiver of earlier procedural flaws.").

was forfeited by Mr. Smith when he pled guilty and failed to timely challenge his pleas.

¶11 The court of appeals agreed with Mr. Smith. To begin, it noted that "[c]laims relating to the validity of the [preliminary hearing] waiver itself are waivable" and further recognized that "even a constitutional defective waiver of a defendant's right to a preliminary hearing could invest the district court with *jurisdiction* if it resulted in a bindover."[10] But it distinguished Mr. Smith's case because "no wavier–valid or otherwise–was effected prior to the time the district court accepted and entered Smith's guilty plea, and thus Smith was never bound over at all."[11] Because the district court did not hold a preliminary hearing, and did not obtain an express waiver of the right to a preliminary hearing from Mr. Smith, the court of appeals reasoned that a district court never acquired the jurisdiction necessary to accept his guilty plea.[12]

¶12 We reverse the court of appeals' decision and conclude that a district court's exercise of jurisdiction does not hinge on whether it held a preliminary hearing, obtained an express waiver of the right to a preliminary hearing, or issued a bindover order. Two important points support this conclusion. First, during the last two decades the Legislature has merged the functions of district courts and the former circuit courts, thereby rendering obsolete the jurisdictional framework we discussed in *State v. Humphrey*.[13] And second, the jurisdictional statues relevant here grant district courts broad subject matter jurisdiction over criminal matters, and nothing in either the Utah Constitution or Utah Code makes the exercise of that jurisdiction dependent on a defendant's right to preliminary hearing or the issuance of a bindover order. Because we reverse on this basis, we do not reach the State's alternative argument concerning a claimed express waiver by Mr. Smith.

I. Intervening Developments Between Our Decision in
*State v. Humphrey* and This Case Render
*Humphrey* Inapplicable Here

¶13 Mr. Smith's primary argument is that our decision in *State v. Humphrey* makes the issuance of a bindover order, after holding a

---

[10] *State v. Smith*, 2013 UT App 52, ¶ 10 n.3, 306 P.3d 810.

[11] *Id.*

[12] *Id.* ¶ 11.

[13] 823 P.2d 464 (Utah 1991).

preliminary hearing, a jurisdictional prerequisite to a district court's exercise of subject matter jurisdiction. We disagree. *Humphrey* was decided under a prior jurisdictional framework, and intervening large-scale structural changes to Utah's district court system make *Humphrey*'s holding inapplicable to the present case.

¶14 Formerly, Utah's trial court system, outside of the juvenile court context, consisted of two tiers: circuit courts and district courts. In a criminal case, the prosecution typically filed an information in the circuit court.[14] Acting as a magistrate, the circuit court then held a preliminary hearing.[15] If the circuit court found that the government had met its burden, it would issue a bindover order and transfer the case to a district court.[16] The district court did not obtain jurisdiction until it received the information and other records transferred by the circuit court magistrate.[17]

---

[14] *See State v. Schreuder*, 712 P.2d 264, 268 (Utah 1985) (noting that "while the statute [governing proceedings before magistrates] implies that magistrates will ordinarily sit in courts other than the district court, it does not contain any jurisdictional limitations" and "circuit court judges do not have exclusive jurisdiction to conduct preliminary examinations"); *see also Humphrey*, 823 P.2d 464, 466 n.5 (Utah 1991) (characterizing the facts of *Schreuder* as "[a]typical[]" because the defendant's preliminary hearing was conducted by a district court judge).

[15] UTAH CODE § 78-4-5(1)(a) (Supp. 1991) ("The judge of the circuit court has the authority and jurisdiction of a magistrate including the conducting of proceedings for the preliminary examination . . . of persons charged with criminal offenses.").

[16] *See Humphrey* 823 P.2d at 465 ("A magistrate issues a bindover order after a preliminary hearing upon finding that there is probable cause to believe the defendant has committed the crime charged in the information. By the bindover order, the magistrate requires the defendant to answer [the information] in the district court. The information is then transferred to the district court, permitting that court to take original jurisdiction of the matter." (alteration in original) (internal quotation marks omitted)).

[17] *Id.* at 465 n.2; *see also State v. Ortega*, 751 P.2d 1138, 1139 (Utah 1988) ("[W]e have consistently held that a criminal defendant cannot lawfully be tried for and convicted of a crime for which he or she was not given, or for which he or she did not waive, a preliminary hearing."); *State v. Jensen*, 136 P.2d 949, 955 (Utah 1943) (reversing a

(continued)

¶15 In *Humphrey* we faced the issue of whether, following the creation of the Utah Court of Appeals, district courts still had jurisdiction to quash bindover orders.[18] We held that district courts did have such jurisdiction because they had "the obligation to determine whether [their] original jurisdiction [had] been properly invoked."[19] Because circuit courts have now been eliminated, *infra* ¶¶ 23–24, the central holding of *Humphrey* no longer applies. But Mr. Smith nonetheless argues for its application, relying heavily on a footnote from the opinion:

> Historically, a district court did not acquire jurisdiction until an information was filed with it, and this could not occur until after the magistrate's preliminary hearing and bindover. Although under the current statutory scheme a felony information (rather than a complaint) is first filed before a magistrate . . . it is still true that the district court does not acquire jurisdiction until after a bindover order issues and the information and all other records are transferred to the district court.[20]

Mr. Smith argues that this footnote establishes the rule that a bindover order, issued after a preliminary hearing, is an essential prerequisite for a district court to exercise subject matter jurisdiction. Thus, he contends, even if a district court has subject matter jurisdiction to adjudicate a charge, that power never vests in the court until it holds a preliminary hearing and issues a bindover order.

¶16 The court of appeals agreed that a bindover order, following either a preliminary hearing or its waiver, is a procedural prerequisite and reasoned that "even where a court has subject matter jurisdiction over a particular type of case, it may be unable to exercise that jurisdiction where certain procedural prerequisites have not been met to invoke it."[21] The court likened the bindover order that follows a preliminary hearing to two procedural prerequisites

---

defendant's conviction where she "was not given a preliminary hearing for the offense of which she was convicted").

[18] *Humphrey* 823 P.2d at 465.

[19] *Id.* at 466.

[20] *Id.* at 465 n.2 (citations omitted).

[21] *State v. Smith*, 2013 UT App 52, ¶ 9, 306 P.3d 810.

required for appellate jurisdiction: (1) the final order doctrine, and (2) the notice of appeal requirement.

¶17 This reasoning is misplaced, however, because of intervening developments since our decision in *Humphrey*. Following our decision in that case the Legislature merged the circuit court into the district court.[22] The merger statute gives the district court jurisdiction over all matters previously filed in the circuit court. Specifically, the statute states that "[t]he district court shall have jurisdiction as provided by law for the district court and shall have jurisdiction over all matters filed in the court formerly denominated the circuit court."[23] In criminal cases, an information is now always filed directly with the district court. Because jurisdiction in criminal cases now vests originally with district courts, and because circuit courts have been abolished, our conclusion in *Humphrey* no longer applies. Accordingly, we reject Mr. Smith's argument that *Humphrey* applies to our current statutory scheme.

## II. District Courts Have Broad Subject Matter Jurisdiction Over Criminal Cases and Neither the Utah Constitution nor the Utah Code Makes That Jurisdiction Contingent Upon a Preliminary Hearing, Its Waiver, or a Bindover Order

¶18 Subject matter jurisdiction concerns a court's power to hear a case. "A court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court derives its authority."[24] And neither the Utah Constitution nor the Utah Code makes a preliminary hearing, its waiver, or a bindover order an essential part of a district court's exercise of subject matter jurisdiction. Instead, a district court acquires subject matter jurisdiction over a case upon the filing of an information in the court.

---

[22] UTAH CODE § 78A-1-105(1) ("Effective July 1, 1996, the circuit court shall be merged into the district court."); *id.* § 78A-1-105(2) ("The district court shall continue the judicial offices, judges, staff, cases, authority, duties, and all other attributes of the court formerly denominated the circuit court.").

[23] *Id.* § 78A-1-105(1).

[24] *Myers v. State*, 2004 UT 31, ¶ 16, 94 P.3d 211 (internal quotation marks omitted).

¶19 Article I, section 13 of the Utah Constitution provides criminal defendants with the right to a preliminary hearing:

> Offenses heretofore required to be prosecuted by indictment, shall be prosecuted by information after examination and commitment by a magistrate, unless the examination be waived by the accused with the consent of the State, or by indictment, with or without such examination and commitment.[25]

But nothing in the section suggests that a district court does not have jurisdiction to hear a criminal case simply because a defendant's right to a preliminary hearing is violated.

¶20 Section 78A-5-102(1) of the Utah Code grants district courts broad subject matter jurisdiction over criminal cases. Specifically, the statute provides that district courts have "original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law."[26] In addition, section 78A-5-102(4) grants district courts "jurisdiction over all matters properly filed in the circuit court prior to July 1, 1996." These statutes grant district courts power to exercise subject matter jurisdiction over the full range of cases that would have been heard premerger by either a circuit court or district court. Additionally, nothing in these statutes suggests that district court jurisdiction is contingent upon a preliminary hearing, its waiver, or a bindover order.

¶21 Indeed, as the State points out, we impliedly recognized in *State v. Hernandez* that neither a preliminary hearing nor a bindover order is a jurisdictional prerequisite.[27] In *Hernandez*, we interpreted Article I, section 13 of the Utah Constitution to provide defendants charged with a class A misdemeanor the right to a preliminary hearing.[28] We limited our holding, however, by giving it only prospective application.[29] In doing so, we implicitly recognized that neither the lack of a preliminary hearing nor a failure to issue a bindover order can deprive a district court of subject matter jurisdiction because it is not within our power to overlook defects in

---

[25] UTAH CONST. art. I, § 13.

[26] UTAH CODE § 78A-5-102(1).

[27] 2011 UT 70, 268 P.3d 822.

[28] *Id.* ¶ 29.

[29] *Id.* ¶ 29 n.3.

subject matter jurisdiction. If the lack of a preliminary hearing and bindover order affected a district court's subject matter jurisdiction, then class A misdemeanor defendants who entered a guilty plea or were convicted before our decision in *Hernandez* could have properly challenged their convictions as void. Our decision in *Hernandez* therefore supports our conclusion that a district court's subject matter jurisdiction is not linked to whether a defendant's preliminary hearing right has been violated or whether a court has issued a bindover order.

¶22 Even though neither the Utah Constitution nor the Utah Code makes district court jurisdiction contingent on either a preliminary hearing or bindover order, Mr. Smith nonetheless argues that a preliminary hearing and bindover order are necessary because of the distinction between magisterial and judicial functions. But as discussed below, that distinction is irrelevant for purposes of jurisdiction. Instead, the event that vests a district court with subject matter jurisdiction is the filing of an information.

¶23 Before the circuit court and district court merged, circuit court judges acted as magistrates in conducting preliminary hearings. They were restricted in their activities and, in felony cases, could perform only magisterial duties.[30] After the circuit court issued a bindover order and transferred the case to the district court, the district court had jurisdiction to hold a trial.

¶24 At the time, district court judges could also perform magisterial functions similar to a circuit court judge.[31] But today, there are no circuit court judges. Only district court judges perform

---

[30] *See* UTAH CODE § 78-4-5(1)(a) (Supp. 1991) (limiting circuit court jurisdiction to "impose . . . punishments" to "all classes of misdemeanors and infractions involving persons 18 years of age and older," but also providing that "[t]he judge of the circuit court has the authority and jurisdiction of a magistrate including the conducting of proceedings for the preliminary examination . . . of persons charged with criminal offenses").

[31] *See State v. Schreuder*, 712 P.2d 264, 268 (Utah 1985) (noting that "while the statute [governing proceedings before magistrates] implies that magistrates will ordinarily sit in courts other than the district court, it does not contain any jurisdictional limitations" and "circuit court judges do not have exclusive jurisdiction to conduct preliminary examinations").

magisterial functions.[32] As we stated in *State v. Jaeger*, a district court judge may "[take] off his judicial hat and put on his magistrate's hat" depending on the function involved.[33] But that separation between functions does not mean that the district court loses jurisdiction when it moves between these different capacities.[34] Rather, subject matter jurisdiction vests with the district court upon the filing of an information.[35] Indeed, as we noted above, even before the Legislature merged the circuit and district courts, it was the filing of an information that triggered jurisdiction. But in the premerger regime district courts did not have jurisdiction "until after a bindover order issue[d] and the information and all other records

---

[32] We note, however, that in some circumstances justice court judges function as magistrates. *See* UTAH CODE § 78A-2-220(2).

[33] 886 P.2d 53, 54 n.2 (Utah 1994).

[34] A majority of the states that allow for prosecution by information similarly hold that a court's failure to conduct a preliminary hearing and issue a bindover order is not a jurisdictional defect. *See* E.W.H. Annotation, *Defendant's Plea to Indictment or Information as Waiver of Lack of Preliminary Examination*, 116 A.L.R. 550 (1938) ("It has also been held that by pleading guilty a defendant waives his right to a preliminary examination, thereby precluding his making a subsequent claim that he had no such examination."); 21 AM. JUR. 2D *Criminal Law* § 527 (2008) ("An accused can waive defects in a preliminary examination proceeding, as well as the holding of the proceeding at all."); 22 C.J.S. *Criminal Law* § 456 (2006) ("Failure to accord the accused a preliminary examination, as provided by law, only goes to the regularity of the proceedings, and it does not vitiate subsequent proceedings such as the indictment, the trial, or conviction." (footnotes omitted)). *But see* WAYNE R. LAFAVE ET AL., 4 CRIM. PROC. § 14.2(g) (3d ed. 2007) ("[S]ome states hold that the preliminary hearing is a jurisdictional prerequisite. In these states, a conviction will be overturned, without regard to any showing of trial prejudice, if the appellate court determines that the right to a hearing was denied.").

[35] UTAH R. CRIM. P. 5(a) ("Unless otherwise provided, all criminal prosecutions whether for felony, misdemeanor or infraction shall be commenced by the filing of an information or the return of an indictment. Prosecution by information shall be commenced before a magistrate having jurisdiction of the offense alleged to have been committed unless otherwise provided by law.").

[were] transferred to the district court."[36] Because an information is now always filed directly with the district court, the fact that a district court judge exercises both magisterial and district judge functions is irrelevant for purposes of subject matter jurisdiction.

¶25 Here, even assuming the district court erred by neither holding a preliminary hearing nor issuing a bindover order, that error does not implicate subject matter jurisdiction because the court obtained subject matter jurisdiction upon the filing of the information. Mr. Smith could have raised the error before entering his plea or sought to withdraw his plea before sentencing. By doing neither he forfeited those challenges.[37]

**Conclusion**

¶26 We conclude that the district court's failure to issue a bindover order following either a preliminary hearing or express waiver by Mr. Smith of his right to a preliminary hearing did not divest the court of subject matter jurisdiction. Following the merger of the circuit courts and district courts, district courts have the full scope of subject matter jurisdiction once an information is filed in a criminal case. We therefore reverse the court of appeals and affirm the district court's order entering Mr. Smith's guilty plea and sentence.

---

[36] *State v. Humphrey*, 823 P.2d 464, 465 n.2 (Utah 1991).

[37] UTAH CODE § 77-13-6(2)(b) ("A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion before sentence is announced.").